### STATE *v.* BARTER.

One may be an agent, within the statute of embezzlement (Gen. St., *c.* 257, *s.* 8), who is not engaged in a general or continuous agency or service, but is authorized on a single occasion by the maker of certain notes to exchange them in renewal of others.

The person authorized to make the exchange may be an agent for that purpose, although the notes are made for his accommodation, and he is acting for himself as well as for the maker.

INDICTMENT, upon Gen. St., *c.* 257, *s.* 8, for embezzlement of negotiable notes received from K. and P. by the defendant as their agent. There was evidence tending to show that K. and P. had signed notes for the defendant, with an understanding that when they became due others signed by K. and P. would be given in renewal; that when the

first notes became due K. and P. delivered to the defendant new ones, signed by themselves, to be by him delivered in exchange for the old ones ; and that the defendant, instead of making the exchange, procured the new notes to be discounted, and converted them and the proceeds to his own use. The defendant moved for a new trial, because the court refused to instruct the jury that there was no competent evidence of his being an agent of K. and P.

*Rolfe*, for the defendant, cited 2 Bishop C. L., *s.* 348 ; 3 Chitty C. L. 96 ; Arch. Cr. Pl. 156 ; *Com.* v. *Wyman*, 8 Met. 247, 253.

*Farr*, solicitor, for the state, cited 1 Bishop C. L., *s.* 288 ; 2 *id.*, *s.* 340 ; Bishop Stat. Cr., *s.* 271 ; 2 Wharton C. L., *ss.* 1917, 1920.

DOE, C. J. The language of the statute is, " any officer, agent, or servant of any corporation, public or private, or the clerk, servant, or agent of any person." Gen. St., *c.* 257, *s.* 8. The meaning of these comprehensive terms is not restricted by authorities relating to statutes of a narrower purpose. The phraseology of this statute shows that the legislature intended not to exempt from its operation agents who receive no compensation for their services, or agents not employed in a general, continuous, or prolonged service, or agents over whose action their principals do not exercise an extensive control. Such agents are not expressly excepted ; and there is nothing from which an exception of them can be implied. The object was to remedy in certain cases the defect established in the law by the rule that there is no larceny without a wrongful taking. Officers, clerks, servants, and agents, by virtue of their employment, having property of others rightfully in their possession, and converting it, not by a technical trespass, but in violation of a trust reposed in them, had been held not guilty of larceny on account of the lawfulness of their possession. The statute was designed to correct the evil introduced by the decisions in such cases. And the evil of embezzlement by agents was not confined to instances in which the fiduciary relation was of long duration, or was accompanied by compensation, or a certain measured extent, exclusiveness, or subordination of service. The question is not how general, protracted, or exclusive the defendant's agency was, but whether he was the agent of K. and P. for exchanging the evidence of their liability. He was their agent for that purpose, if he and they understood him to be so ; and there was evidence on which the jury might find an understanding to that effect.

As there is an implied agreement that the holder of a note will, if possible, return it to the maker when he pays it, so there was an implied agreement that the defendant would return the new notes to the makers, K. and P., if he could not make the authorized exchange. And as they could maintain trover or replevin for notes which they made and paid ( *Stone* v. *Clough*, 41 N. H. 290, 296), so they could maintain trover or replevin against the defendant for the new notes

when he manifested a determination to make an unauthorized and fraudulent use of them. The new as well as the old notes were made by them for his accommodation ; and if he had made the authorized exchange, he would have transacted business for his own benefit. But it might be found, upon the evidence, that the exchange was understood to be, and was in fact, their business as well as his, and that he undertook to act in that affair for them as well as for himself, to prevent the bringing of suits against them upon the old notes. He was authorized by them to make the exchange, and he was not authorized to make any other use of the new notes. If he had executed his authority, a ground of their liability as makers of the new notes might be found in his authority, received from them, to act for them in exchanging the evidence of their liability. His authority thus to act for them might be the authority of their agent, as it would have been if the notes, old and new, had been made for their benefit and not for his, and he had been constantly employed and paid by them to transact all their business. If he and they understood he was to make the exchange in his own behalf, and also as their agent, his unauthorized conversion of the notes was a breach of an agent's trust within the letter and design of the statute.

In many cases persons have been held not to be clerks or servants within the meaning of certain statutes. In *Reg.* v. *Bowers*, L. R. 1 C. C. 41, the defendant was authorized, as a travelling agent, to get orders for coals when and where he pleased, and to receive payment for them, and was entitled to a commission on what he collected and paid to his employer. He was held not to be sufficiently under his employer's control to be a clerk or servant, being at liberty to dispose of his time in the way he thought best, and to get or to abstain from getting orders on any particular day, as he might choose. This state of things was deemed inconsistent with the relation of master and servant; but he certainly was an agent in the collection of his employer's money. The decision in *Reg.* v. *Negus*, L. R. 2 C. C. 34, was the same as in *Reg.* v. *Bowers*. In *Reg.* v. *Foulkes*, L. R. 2 C. C. 150, it was held there was evidence on which the jury might find that the defendant was employed as a clerk or servant, although his service was performed without compensation, and under no contract or other obligation. In *Rex* v. *Prince*, 2 C. & P. 517, there was evidence upon which the jury might have found the defendant was an agent of the prosecutor for getting a bill discounted. Abbott ruled he was not an agent, within a certain statute, because he undertook to get the bill discounted as a special, friendly act, and not in the exercise of a general business of agency. This conclusion was reached upon evidence of the legislative intention found in the preamble, and the application of the rule that limits a general signification of a word by the restricted sense of others of the context, when it is so grouped with them as to raise a presumption that the meaning of them all was intended to be confined within certain bounds of classification. If, in *Reg.* v. *Cooper,* L. R. 2 C. C. 123, *Reg.* v. *Tatlock*, 2 Q. B. D. 157, *Reg.* v. *Cosser*, 13

Cox C. C. 187, *Com.* v. *Stearns,* 2 Met. 343, *Com.* v. *Libbey,* 11 Met. 64, *Com.* v. *Foster,* 107 Mass. 221, *State* v. *Kent,* 22 Minn. 41, or in any other case that we have seen, there is any statutory construction that would not allow the question of agency in this case to be submitted to the jury, the reports do not sustain it by any reasoning we can adopt.

In former times English courts mitigated the severity of the criminal code by a usurpation of legislative power. When death was the punishment of small offences, and capital crimes were enumerated by the hundred, judges introduced, in favor of life, a strictness of statutory construction that often defeated the undoubted and plainly expressed will of parliament; and the authority of the precedent continues to prevail when the reason of humanity, on which it was based, has ceased to exist. *Darling* v. *Westmoreland,* 52 N. H. 401, 407, 408. In *Reg.* v. *Prince,* L. R. 1 C. C. 150, 155, BLACKBURN refers to some of the evil consequences of the precedent in the modern administration of justice. There is no moral pretext for continuing the unconstitutional usurpation where the criminal code has been conformed to enlightened sentiments of justice by the humane action of the law-making power. When the meaning of a penal statute is doubtful, the accused has the benefit of the doubt; but when its meaning is not doubtful, we have no more authority to exercise legislative power, by employing a so-called rule of strict construction to except a case out of the statute, contrary to the clearly expressed intention of the legislature, than to change or repeal that or any other statute without a pretence of construction.

*Judgment on the verdict.*

STANLEY, J., did not sit: the others concurred.